**E-FILED**
Wednesday, 20 April, 2016  04:24:58 PM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

APR 2 0 2016

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

United States of America )
v. )
Jeffery Wilford )
)
)
)
)

Case No. 16-mj-3026

_____
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   December 2015 through April 2016   in the county of   Sangamon   in the

Central   District of   Illinois   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 & 18 U.S.C. 2 | Aiding and Abetting the Distribution of Controlled Substances |
| 21 U.S.C. 841 & 846 | Conspiracy to Distribute Controlled Substances |

This criminal complaint is based on these facts:

See Affidavit

☐ Continued on the attached sheet.

s/ Richard Dollus

*S/A*

*Complainant's signature*

Rick Dollus, Agent Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

s/ Tom Schanzle-Haskins

Date:   04/20/2016

*Judge's signature*

City and state:   Springfield, Illinois

Tom Schanzle-Haskins, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT

I, Richard Dollus, being first duly sworn on oath, hereby depose and state as follows:

1.     I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Springfield, Illinois Resident Office. I have been employed with the DEA since June 1999. Prior to my employment with the DEA, I was employed as a Police Officer with the City of Belleville, Illinois for approximately 5 years. I attended the DEA Basic Agent training in Quantico, Virginia. During that period of time, I was trained in the investigation of controlled substances under federal law, including but not limited to drug identification, writing reports, court testimony, tactical operations and defensive tactics, evidence collection, and undercover operations. I have also attended numerous schools, training and seminars relating to the investigation of narcotics traffickers and money laundering. Since my time of employment with the DEA, I have personally initiated, investigated, and participated in numerous narcotics investigations leading to the arrest and prosecution of individuals under investigation for violations of federal narcotics laws, including the seizure and forfeiture of assets from drug proceeds.

2.     This affidavit is made in support of the issuance of a criminal complaint and arrest warrant for Jeffery WILFORD, hereinafter referred to as "WILFORD" for conspiring to knowingly and intentionally distribute a controlled substance and aiding and abetting the distribution of heroin, namely heroin in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2.

3.     The statements contained in this affidavit are based in part on my own personal observations, information provided by other DEA agents and other law enforcement officers, on information provided by other witnesses, and on my experience and background as a law enforcement officer. The information contained in this affidavit is not an exhaustive account of everything I know about this case.

4.     In approximately September 2015, DEA became involved in an investigation which focused on alleged heroin distribution activities involving subjects positively identified as WILFORD, Mario LEACHMAN, hereinafter referred to as "LEACHMAN", and others associated with LEACHMAN in Springfield, IL.

5.     On December 16, 2015, agents formulated a plan for an Illinois State Police (ISP) Confidential Source (hereafter referred to as CS) to purchase 2 grams of purported heroin from WILFORD or from one of WILFORD's heroin distributors in Springfield, IL. The CS reported knowing WILFORD

for several years and reportedly began purchasing heroin from WILFORD in 2014. The CS advised that he/she purchased heroin one time per week then eventually began purchasing every day from WILFORD. The CS stated that during the past 2 months, he/she had been purchasing 1 to 2 grams of heroin on one to two occasions per week. The CS further stated that before the two month period of time, he/she was purchasing 1 to 2 grams of heroin each month for 3 or 4 months. The CS stated that WILFORD would also "front" him/her heroin. The CS stated that on approximately 4 occasions, WILFORD referred him/her to a subject who utilized the nickname "Big Boy" to purchase heroin. The CS explained that "Big Boy" distributed heroin for WILFORD. The CS later identified a photograph of LEACHMAN as Big Boy.

6.     The CS reported speaking with WILFORD earlier on this date (12-16-15) and WILFORD indicated Big Boy (LEACHMAN) would contact the CS to arrange a heroin transaction. At approximately 1:31 pm, the CS attempted to contact both "Big Boy" (217-441-5346) and WILFORD (217-271-9888) via telephone. After several attempts, at approximately 1:45 pm, the CS made contact with WILFORD at cellular telephone number 217-271-9888. The following is a summary of the conversation. The CS told WILFORD he/she needed "2 times". The CS asked WILFORD where

he/she had to go. The CS stated "Wal-Mart like last time?" WILFORD told the CS to "come to 13th" (2133 S. 13th, Springfield, Illinois). The CS stated that he/she would be there in 10 minutes. This conversation was recorded.

7.     Before leaving the pre-arranged location to meet with LEACHMAN, the CS received an incoming call from LEACHMAN (217-441-5346). The CS was unable to answer the call. Insp. Lehr instructed the CS to call LEACHMAN back. The following is a summary of the conversation. The CS told LEACHMAN that "Jeff" told him/her to meet him at 13th street. LEACHMAN replied "I told him to tell you that". LEACHMAN told the CS to "come on". The CS advised that he/she was on his/her way. This conversation was recorded.

8.     The CS and CS' vehicle were searched by agents for contraband with negative results. The CS was provided with $320.00 (pre-recorded) and equipped with audio/video recording equipment. At approximately 2:04 pm, the CS left the pre-arranged location en route to 2133 S. 13th, Springfield, Illinois. Insp. Sean Haefeli observed a black male subject, later identified as LEACHMAN, standing outside the residence near the side walk. At approximately 2:10 pm, the CS arrived in the CS vehicle. Insp. Haefeli observed LEACHMAN walk to the passenger side of the CS's vehicle and open the door then enter. At approximately 2:11 pm, Insp. Haefeli observed

LEACHMAN exit the vehicle and walk back towards the area of 2133 S. 13th. The CS departed followed by agents.

9.    Insp. Lehr met with the CS at a pre-arranged location. The CS provided Insp. Lehr with six small bags containing a brown substance. Agents later weighed the brown substance (2.3 grams) and conducted a presumptive field test for the presence of opiates, which produced positive results. The CS advised that LEACHMAN was standing at the curb waiting for him/her when he/she arrived. The CS stated that LEACHMAN got into the passenger side of the CS vehicle and asked how much heroin the CS wanted. The CS advised LEACHMAN that he/she wanted 2 grams. LEACHMAN gave the CS the heroin and in return the CS provided LEACHMAN with $320.00. The CS stated that LEACHMAN then exited the vehicle.

10.    Agents later reviewed the audio/video recording and could observe a black/male subject enter the CS's vehicle. The conversation between the CS and LEACHMAN was consistent with what the CS reported, but agents were unable to observe a clear image of the subject reported by the CS as LEACHMAN.

11.    On January 7, 2016, agents formulated a plan for the ISP CS to purchase 5 grams of purported heroin from Jeffery WILFORD or from one

of WILFORD's heroin distributors in Springfield, IL. Agents met with the CS, who reported WILFORD recently told the CS he was stopped by the police on his way to Springfield, and at the time of the traffic stop WILFORD allegedly had 4 ounces of heroin, which was not located by the police (agents were aware this traffic stop had occurred in Morgan County, IL on 01-04-16).

12.    At approximately 2:54 pm, the CS called WILFORD's cellular telephone number 217-271-9888. The CS was unable to make contact. At approximately 2:59 pm, the CS received an incoming call from cellular telephone number 573-231-6893. The CS identified the caller as WILFORD. The following is a summary of the conversation. The CS told WILFORD that he/she was already "in town". WILFORD asked where the CS was at. The CS told WILFORD that he/she needed to "see him right away in about 20 minutes". The CS stated "I want to do 160 times 5....You know the guys I have been working with...I put it together, I been doing this shit". WILFORD responded "Alright ah...You on sixth Street?" WILFORD told the CS to meet him at the McDonalds restaurant located at Sixth Street and South Grand Avenue. The CS advised that he/she would be there in 20 minutes. The conversation was recorded. Your affiant is familiar with Jeffery WILFORD and has had numerous conversations with WILFORD.

Your affiant positively identified the subject who spoke to the CS as
WILFORD.

13.    The CS and CS' vehicle were searched for contraband with negative
results. The CS was provided with $800.00 (pre-recorded) and the CS was
equipped with concealed audio/video recording equipment.

14.    During this operation, agents conducted surveillance of 2133 S. 13th
Street, Springfield. Agents observed LEACHMAN's green GMC SUV
bearing IL registration Z357880 (registered to: Tequlia Drake 2133 S. 13th
Street, Springfield) parked at the residence. WILFORD had been observed
at this residence on multiple occasions. At approximately 3:28 pm,
WILFORD's Buick bearing IL registration V403769 arrived at 2133 S. 13th
Street. A short time later, the CS advised agents that WILFORD called and
told the CS he was busy and referred the CS to Big Boy (LEACHMAN).
The CS reported LEACHMAN subsequently directed the CS to meet at the
Wal-Mart located at 1100 Lejune Dr., Springfield. The CS was followed to
this location by agents. The CS parked at approximately 3:42 pm and
remained under surveillance.

15.    At approximately 3:41 pm, WILFORD and others, later identified as
unknown females, exited 2133 S. 13th and departed in the Buick. The

green GMC remained parked at 2133 S. 13th. The Buick was followed to the White Oaks Mall area in Springfield.

16.    At approximately 3:49pm, LEACHMAN's green GMC (Z357880) arrived and park next to the CS in the Wal-Mart lot. Agents observed the CS exit his/her vehicle and enter the front passenger seat of the GMC. At approximately 3:51pm, agents observed the CS exit the GMC and re-enter his/her vehicle. Agents observed a black male subject driving the GMC, who matched the physical description of LEACHMAN, and he was the only occupant in the GMC. Agents followed the GMC back to 2133 S. 13th Street, where the GMC parked.

17.    Agents met with the CS, who provided agents with a plastic bag containing smaller plastic bags of purported heroin. Agents later weighed the purported heroin (5.7 grams) and conducted a presumptive field test for the presence of opiates, which produced positive results. The CS provided agents with $50.00 and reported "Big Boy" (LEACHMAN) gave him/her a discount. The CS reported when LEACHMAN arrived at Wal-Mart he motioned for the CS to come into his vehicle. The CS reported giving LEACHMAN the $800.00 and LEACHMAN then gave the CS the suspected heroin. The CS reportedly told LEACHMAN he/she wanted to talk to WILFORD about getting a break on the price of the heroin and LEACHMAN

then gave the CS $50.00 back. The CS and CS' vehicle were searched by agents for contraband with negative results. Later agents discovered the recording equipment had malfunctioned and no recording was obtained.

18.    On April 19, 2016, Agents arrested LEACHMAN and transported him to the Springfield Police Department. LEACHMAN was read his Miranda Rights and advised that he understood. LEACHMAN signed the Miranda Waiver and agreed to speak with agents. LEACHMAN advised that in December 2015 WILFORD asked him to store heroin at his residence located at 2133 S. 13th St., Springfield, Illinois. LEACHMAN admitted that between December 2015 and April 2016, WILFORD stored heroin at his residence on approximately 3 or 4 occasions per month. LEACHMAN stated that he believed the amount of heroin was approximately one ounce each occasion. LEACHMAN stated that he delivered heroin to WILFORD's customers on numerous occasions. LEACHMAN explained that when WILFORD worked during the day, he would sell the heroin for WILFORD. LEACHMAN stated that he would sell small amounts of heroin to the customers. LEACHMAN stated that on average, he would sell between $200.00 and $300.00 per day for WILFORD. LEACHMAN advised that he would provide WILFORD the money after the sales. LEACHMAN stated that he did not make any money from the sales of the heroin and that all

the money went to WILFORD. LEACHMAN stated that WILFORD only paid

him for "storing" the heroin at his residence. LEACHMAN stated that

WILFORD paid him $200.00 or $300.00 each time he "stored" the heroin.

LEACHMAN stated that on numerous occasions WILFORD would call him

and tell him where to meet the heroin customers. LEACHMAN stated that

when WILFORD is not working, nights and weekends, WILFORD would

distribute heroin to the customers. The interview of LEACHMAN was

audio/video recorded.

19.    On April 19, 2016, Agents arrested WILFORD and transported him to

the Springfield Police Department. WILFORD was read his Miranda Rights

and advised that he understood. WILFORD signed the Miranda Waiver and

agreed to speak with agents. WILFORD advised that LEACHMAN traveled

to Chicago Illinois to obtain heroin. WILFORD advised that during the past

8 months, LEACHMAN had purchased 25 grams of heroin every 10 to 11

days from his source in Chicago Illinois. WILFORD admitted that he

purchased 1 or 2 grams of heroin on occasion from LEACHMAN.

WILFORD admitted that he sold the heroin that he obtained from

LEACHMAN "on the weekends". WILFORD denied being LEACHMAN

source of supply of heroin. WILFORD denied directing LEACHMAN to

distribute heroin to other individuals. The interview of WILFORD was

audio/video recorded.

s/ Richard Dollus

Richard Dollus, DEA Special Agent

Subscribed and sworn to before me this 20th day of April, 2016.

s/ Tom Schanzle-Haskins

Tom Schanzle-Haskins

UNITED STATES MAGISTRATE JUDGE